IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID R. MARKIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 497 |
| | ) | |
| v. | ) | Hon. Ruben Castillo |
| | ) | U.S. District Court Judge |
| CHEBEMMA INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David Markin ("Markin"), filed a one-count complaint ("Complaint") against Defendant, Chebemma, Inc. ("Chebemma"), for breach of a promissory note (the "Note"). Chebemma counterclaimed for breach of the Note and seeks a declaration from this Court that its interpretation of what it owes Markin under the Note is correct. This case is properly in federal court on the basis of diversity jurisdiction. This matter is before the Court on Chebemma's motion for summary judgment. (R. 21.) For the reason stated below, this Court denies Chebemma's motion.

### FACTS[1]

**I.      The Promissory Note**

On or about August 27, 2004, Chebemma and Markin entered into the Note, in which Chebemma promised to pay Markin $2,385,000 (the "Beginning Principal Amount") plus interest, in exchange for the property located at 1163-1167 State Street, Chicago, Illinois (the "Property"). (R. 1, Compl., Ex. A, Note.) Pursuant to the terms of the Note, Chebemma agreed to make monthly payments to Markin of $13,200 beginning on October 1, 2004, and ending

---

[1] Unless otherwise noted, the following facts are undisputed.

September 1, 2006. (*Id.*, ¶ 1(a).) The Note further stated that the unpaid balance of the Beginning Principal Amount plus unpaid interest was due and payable on the last day of September 2006. (*Id.*, ¶ 1(b).)

The total due under the Note was subject to an "Earn Out." (*Id.* ¶ 2.) The Earn Out provision stated that upon maturity of the Note (September 30, 2006), sale of the Property, or refinance of the Property's first mortgage, Chebemma shall calculate and deliver the "aggregate Net Rent" to Markin. (*Id.* ¶ 2(b).) The Note does not define "aggregate Net Rent," but does define "Net Rent" as "annual gross rent collected from all of the tenants of the Property less annual Expenses incurred operating the property as stated in certified rent rolls, tenant estoppel certificates and leases." (*Id.*) The Note provided that if tenant occupancy of the Property was less than one year, Net Rent would be pro-rated for a full year. (*Id.*) If tenant occupancy was less than 100 percent, Net Rent for the unleased space would be calculated at the highest rental rate paid by any tenant with a signed lease for the Property. (*Id.*) The Note then states that if the "aggregate Net Rent" is greater than $2,800,000, Chebemma shall pay Markin the unpaid portion of the Beginning Principal Amount and all unpaid accrued interest; however, if the "Aggregate Net Rent" is less than $2,800,000, the Beginning Principal Amount shall be reduced from $2,385,000, to $385,000 (the "Modified Beginning Principal Amount"), less all principal amounts paid to Markin. (*Id.* ¶¶ 2(c)-(d).) Under the Note, the Beginning Principal Amount or the Modified Beginning Principal Amount were subject to prepayment by Chebemma without penalty. (*Id.*, ¶ 4.)

On April 20, 2005, Chebemma's attorneys sent a letter to Markin's attorneys requesting to pay off the Note because Chebemma intended to refinance the Property. (R. 12, Exs. to

2

Chebemma Ans. & Countercl., Ex. B, 4/20/05 letter.) Chebemma calculated the aggregate Net Rent to be $1.47 million, the total annual rent minus costs for the leased and unleased space. (*Id.*; R. 33, Markin Resp. to Chebemma Stmt. of Facts ¶19.) Because $1.47 million is less than the $2.8 million indicated in the Earn Out provision of the Note, the letter stated that Chebemma owed the Modified Beginning Principal Amount of $350,000, less principal amounts already paid. (R. 12, Exs. to Chebemma Ans. & Countercl., Ex. B, 4/20/05 letter.) Markin's attorney replied by letter that Chebemma owed the Beginning Principal Amount of $2.385 million, and that Markin would not accept a prepayment of the lesser Modified Beginning Principal Amount. (R. 12, Exs. to Chebemma Ans. & Countercl., Ex. C, 4/28/05 letter.)

On September 25, 2006, Chebemma again calculated aggregate Net Rent to be less than $2.8 million, and offered to pay Markin $315,844.40, the Modified Beginning Principal Amount less principal amounts already made, in purported satisfaction of the Note. (R. 12, Exs. to Chebemma Ans. & Countercl., Ex. E, 9/25/06 letter.) Chebemma calculated aggregate Net Rent by taking the sum of the Net Rent calculated for all tenants (including the Net Rent calculated for tenants who occupied the Property less than one year) and the Net Rent calculated for an unleased space. (*Id.*) Markin refused to accept the September 25, 2006, offer as final payment, because according to Markin's calculations, the aggregate Net Rent was greater than $2.8 million, and thus Chebemma owed $2,385,000, less all principal amounts already paid to Markin. (R. 14, Markin Reply to Chebemma Countercl. ¶¶ 22-23.)

Chebemma alleges that Markin's refusal of Chebemma's offer of final payment in the amount of $315,844.40 was a breach of the terms of the Note, and Chebemma seeks damages, fees, and costs, as a result of the alleged breach. (R. 6, Chebemma Ans. & Countercl. ¶¶ 23, 37-

3

38.) In addition, Chebemma seeks a declaration from this Court that "the amount that Chebemma must pay to satisfy the Note is based upon the Modified Beginning Principal Amount of $385,000.00, less any principal amounts previously paid by Chebemma, for a total of $315,844.40." (*Id.* ¶ 31.) Chebemma now asks this Court to grant summary judgment as to liability in its favor and against Markin as to his complaint. (R. 21, Chebemma Mot. for Summ. J. at 1-2; R. 1, Compl.; R. 6, Chebemma Ans. & Countercl., Count I.)

## LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment must respond with "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56 (e). When reviewing the record, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The parties agree that Illinois law applies to this dispute.[2] (R. 23, Def.'s LR 56.1 Stmt. at

---

[2] The Court will not challenge the parties' choice of law. *See, e.g.*, *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

4

5; R. 33, Pl.'s LR 56.1 Resp. at 5; R. 22, Chebemma Mem. at 5.) The only issue in this summary judgment motion is the meaning of the term "aggregate Net Rent" in the Earn Out provision of the Note.

The determination of whether a contract is ambiguous is a matter of law. *Barnett v. Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006). The Court begins by evaluating the Note for patent, or intrinsic, ambiguities. *Id.* These are ambiguities that exist on the face of the Note. *Id.*; *see also Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 543 (7th Cir. 2000). Markin urges the Court to find ambiguity in the term aggregate Net Rent, while Chebemma argues that the meaning of the term is clear.

As explained above, the Note defines Net Rent as "annual gross rent collected from all of the tenants of the Property less annual Expenses incurred operating the property as stated in the certified rent rolls, tenant estoppel certificates and leases." (R. 1, Compl., Ex. A, Note ¶ 2(b).) The Note goes on to state how to calculate Net Rent in the event that tenant occupancy of the Property is less than one year, or tenant occupancy of the property is less than 100%. (*Id.*) The Note, however, does not define aggregate Net Rent, despite the fact that the meaning of the Earn Out provision depends on the amount of aggregate Net Rent: if the aggregate Net Rent is greater than $2.8 million, Chebemma owes approximately $2,385,000, but if it is less than $2.8 million, Chebemma owes approximately $385,000. (*Id.* ¶¶ 2(c) and (d).)

Looking solely at the Earn Out provision—paragraph 2 of the Note—this Court cannot ascertain the precise meaning of the term aggregate Net Rent because the contract does not define the term. Nevertheless, the Earn Out provision must be viewed in context, and the Note must be considered as a whole in order to ascertain the parties' intent. *Utility Audit, Inc. v. Horace Mann*

*Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). In examining the contract as a whole, the Court must give effect, to the extent possible, to all contractual provisions, so as not to render any terms unnecessary or superfluous. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1038 (7th Cir. 1998); *Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 715 (7th Cir. 2002). In determining whether a contract is intrinsically ambiguous, the Court must look to the entire contract to determine if the "provision that seems ambiguous might be disambiguated elsewhere in the agreement." *Barnett*, 436 F.3d at 833 (internal citations omitted).

Unless a contract clearly specifies its own meanings—which it does not, in this case—in evaluating intrinsic ambiguity the Court must give the words their "ordinary and natural meaning" without questioning the logic of that meaning. *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 880 (7th Cir. 2000); *William Blair*, 830 N.E.2d at 770. Contractual provisions must be read in a manner that makes them consistent with each other. *Interim Health Care*, 225 F.3d at 879 (citing *UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003)). Illinois courts endeavor to construe contracts as a whole, giving meaning to each provision. " *Id.* (internal citations omitted).

The fact that parties disagree about the meaning of a contractual provision does not mean the contract is ambiguous. *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000) (internal citations omitted). Ambiguity can be found only if the contract language is "reasonably or fairly susceptible of more than one construction." *Id.* A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to the term having a double or multiple meaning. *William Blair and Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 769 (Ill. App. Ct. 2005).

6

Assuming, as this Court must, that each term or phrase in the Note has meaning and that no words or terms are superfluous, aggregate Net Rent should mean something different than "Net Rent." *See Miniat*, 315 F.3d at 716. Markin argues that Chebemma's calculation of aggregate Net Rent fails to differentiate between aggregate Net Rent and Net Rent, as it merely adds together the annual rates of the leases in place at the Note's maturity date. (R. 22, Chebemma Mem. at 8; R. 34, Markin Opp'n Br. at 10.) Further, Markin argues that the distinction made in the Note between aggregate Net Rent and Net Rent is not inadvertent, but rather a reflection of the parties' agreement that aggregate Net Rent means the amount of rent to be paid over the terms of the leases in place at the Note's maturity date. (R. 34, Markin Opp'n Br. at 10.) Chebemma counters that Markin's proposed construction would render the Note's Earn Out provision unworkable, because the Note does not indicate how many years to apply to the term of a lease for unleased space, how to calculate aggregate Net Rent for a short-term lease, or how to calculate annual expenses incurred on the Property over the term of a lease. (R. 22, Chebemma Mem. at 10-12.) Markin proposes "common sense" interpretations of the Note, however, that do not yield these unworkable results. (R. 34, Markin Opp'n Br. at 12-14.)

Both parties' have put forth carefully reasoned interpretations of the Note that accord with their interpretations of aggregate Net Rent. After considering the Note and both parties' arguments, this Court concludes that the term aggregate Net Rent is intrinsically ambiguous, as both parties have put forth reasonable interpretations of the term. *Interim Health Care*, 225 F.3d at 879 (contract language is ambiguous if it is "reasonably or fairly susceptible of more than one construction"). The Note leaves patently unclear whether aggregate Net Rent refers to the aggregate annual net rent, as Chebemma suggests, or to aggregate net rent over the terms of the

7

leases, as Markin suggests.

Both parties have attached a great deal of extrinsic evidence to their summary judgment briefing to support their arguments that the term aggregate Net Rent is or is not ambiguous. Courts may look to extrinsic evidence to clear up a contract's ambiguity. *Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 548 (7th Cir. 2004); *see also Hernandez v. Schittek*, 713 N.E.2d 203, 209-10 (Ill. App. Ct. 1999) (if the extrinsic evidence is uncontroverted, the court should determine the contract's meaning as a matter of law). In this case, however, the extrinsic evidence does anything but clear up the Note's ambiguity. The parties not only dispute the validity of certain evidence (*e.g.*, Chebemma argues that the affidavits attached to Markin's brief—including those by purported experts—are invalid), but they also dispute the meaning of other extrinsic evidence, such as the occupancy history of the Property—or lack thereof—and the circumstances surrounding the Note when it was signed. While Chebemma claims that certain extrinsic facts about the Property show that its interpretation of the Note is commercially reasonable, Markin argues that interpreting the Note as Chebemma suggests would be commercially unreasonable.

If there is a dispute as to the interpretation of the extrinsic evidence, this becomes a genuine issue of material fact for a jury and is thus inappropriate for summary judgment. *William Blaire*, 830 N.E.2d at 777. Because the term "aggregate Net Rent" is ambiguous and requires extrinsic evidence to ascertain its meaning, summary judgment is inappropriate. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 586 N.E.2d 1211, 1215 (Ill. 1992) ("When the language of a contract is ambiguous, its meaning must be ascertained through a consideration of extrinsic evidence and summary judgment is, therefore, inappropriate."). The construction of the

8

Note in light of the extrinsic evidence is a question for the trier-of-fact. *Bourke*, 159 F.3d at 1037; *see also Molex Inc. v. Wyler*, 365 F. Supp. 2d 901, 908 (N.D. Ill. 2005). Accordingly, a genuine issue of material fact remains as to the meaning of "aggregate Net Rent," and thus summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Chebemma's Motion for Summary Judgment (R. 21) is denied. The parties are requested to fully exhaust all remaining settlement possibilities for this dispute prior to the next status date. A status hearing will be held on January 15, 2008, to set a firm trial date for this lawsuit unless this Court is notified that the parties have settled this case or consented to the full jurisdiction of Magistrate Judge Ashman.

ENTERED:

DATE: December 14, 2007

HON. RUBEN CASTILLO
**United States District Court Judge**